OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

June 2, 1999

The Honorable Jack Skeen, Jr.
Smith County Criminal District Attorney
Smith County Courthouse
Tyler, Texas 75702

Opinion No. JC-0060

Re: Whether a committee appointed by a commissioners court to recommend the selection of an architect is subject to the Open Meetings Act (RQ-0063)

Dear Mr. Skeen:

You have requested our opinion as to whether a committee appointed by a commissioners court to recommend the selection of an architect is subject to the Open Meetings Act. Under the circumstances you describe, we conclude that it is. Section 2254.003 of the Government Code provides, in relevant part:

> (a) A governmental entity may not select a provider of professional services or a group or association of providers or award a contract for the services on the basis of competitive bids submitted for the contract or for the services, but shall make the selection and award:
>
> (1) on the basis of demonstrated competence and qualifications to perform the services; and
>
> (2) for a fair and reasonable price.

TEX. GOV'T CODE ANN. § 2254.003 (Vernon 1999).

You indicate that, pursuant to section 2254.003, the Commissioners Court of Smith County appointed an "Evaluation Committee" composed of the county judge, one commissioner, the county auditor, the county purchasing agent, the county engineer, the county director of maintenance, and three members of a citizens' task force. The function of the Committee is to receive written information from interested architectural firms, "evaluate written documents, listen to presentations, research previous work history and then rank them as to the most qualified. The recommendation presented to the [commissioners] court . . . is not in any form binding [on] the court." Letter from Nancy F. Braswell, Smith County Auditor, to Honorable John Cornyn, Attorney General 2 (May 4, 1999) (on file with Opinion Committee) [hereinafter Braswell letter of 5/4/99]. After the

court has "determined the 'most qualified,' then the same committee would begin negotiations with that firm, and then the negotiated price [will] be considered by [the] commissioners court." *Id.* You ask whether the presence of the county judge and one commissioner on the Evaluation Committee violates any open meeting requirement.

The Open Meetings Act, chapter 551 of the Government Code, defines "governmental body" to include, on the state level, "a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members," TEX. GOV'T CODE ANN. § 551.001(3)(A) (Vernon 1994), and on the local level, "a county commissioners court in the state," *id.* § 551.001(3)(B), as well as "a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality," *id.* § 551.001(3)(D). The Act further defines "meeting" as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." *Id.* § 551.001(4). Because the Act defines a meeting to involve discussion, consideration, or final action on public business or public policy over which the governmental body has supervision or control, a governmental body must have the authority to supervise or control public business or policy in order to fall within the Act's scope. *See Gulf Reg'l Educ. Television Affiliates v. University of Houston*, 746 S.W.2d 803, 809 (Tex. App.–Houston [14th Dist.] 1988, writ denied). *See also* Tex. Att'y Gen. Op. No. JM-331 (1985) (citizens advisory panel to state agency with no power to supervise or control public business not subject to Open Meetings Act); Tex. Att'y Gen. LO-93-064 (public university's student fee advisory committee that made recommendations for consideration by board of regents not subject to Act).

There are five members of the commissioners court in Smith County—four commissioners and the county judge. The Evaluation Committee thus consists of less than a quorum of the commissioners court. An entity appointed by a governmental body but containing less than a quorum of members of that governmental body may be subject to the Open Meetings Act, either because it falls within a definition of the term "governmental body" or as a subcommittee of a governmental body. In Attorney General Opinion JC-0053 (1999), we recently said that a pricing committee appointed by the Board of Directors of the Texas Public Finance Authority to act on the board's behalf in negotiating a bond sale and executing a bond purchase contract is a state level "governmental body" within the meaning of section 551.001(3)(A), subject to the Open Meetings Act. And in Letter Opinion No. 97-058, this office concluded that a committee of the Texas Funeral Commission consisting of two Commission members and other individuals and that was delegated authority to investigate complaints and supervise investigations exercised and controlled public business and was itself a governmental body for purposes of that provision. Tex. Att'y Gen. LO-97-058, at 5. On a few occasions, we have concluded that a subcommittee is subject to the Act exclusively on the basis of its membership. In Attorney General Opinion H-238 (1974), for example, the attorney general said that standing committees of the Harris County Hospital District, each composed of three but less than a quorum of the District's board of managers, were subject to

the Open Meetings Act. *See also* Tex. Att'y Gen. Op. No. JM-1072 (1989) (subcommittees of board of trustees of independent school district are subject to Open Meetings Act).

But not every body that includes less than a quorum of a governmental body is subject to the Act. In Attorney General Opinion H-994, the attorney general found that a fifteen-member "Committee to Study the Selection Process of Chief Administrative Officers of the Component Institutions of The University of Texas System" was not subject to the Act, even though it was appointed by the Chairman of the Board of Regents and itself contained three regents. Tex. Att'y Gen. Op. No. H-994 (1977) at 3. The "presence of three Regents on the fifteen-member committee" was insufficient to "bring it within the provisions of the Open Meetings Act as a committee of the Board." *Id.* at 2. Despite the recognized danger that a "board might become the rubber stamp of its committees . . . this danger is diminished in the present case by the appointment of twelve other members who might represent different viewpoints within the university system." *Id.* The committee's purpose, according to its enabling resolution, was "to make an extensive study of the selection process and submit its recommendations to the Board of Regents." *Id.* The opinion concluded that "[t]his resolution appears to make the Committee an advisory body only, without power to supervise or control public business." *Id.* Because of "the absence of facts showing that the Committee is more than an advisory body," the attorney general was unable to "say that its meetings are required to be open by the Open Meetings Act." *Id.*

The Evaluation Committee, which contains less than a quorum of the commissioners court, is not itself a "commissioners court" for purposes of section 551.001(3)(B) of the statute. Nor is it obvious that it may properly be classified as "a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county" within the meaning of section 551.001(3)(D). Thus we consider whether the Evaluation Committee is subject to the Open Meetings Act based on its membership, which includes two members of the commissioners court.

In our view, the initial work of the Evaluation Committee falls within the ambit of Attorney General Opinion H-994. The Evaluation Committee's mission is to perform evaluations of architectural firm applicants and submit a recommendation in the form of a ranking of the firms to the commissioners court. As you indicate, the Committee's recommendation is not binding in any way on the court. Even though two members of the commissioners court are members of the Committee, the presence of seven other individuals attests to the likelihood that other viewpoints will be considered. In these circumstances, the commissioners court is less likely to "rubber-stamp" the Committee's choice. On the contrary, you indicate that, even if the Committee ranked one firm in last place, the court could nevertheless award that firm the contract. The Committee's initial work thus appears to be that of an advisory body only, without power to supervise or control public business.

The negotiation process, however, which begins after the commissioners court has selected the "most qualified" firm, raises different concerns. In *Finlan v. City of Dallas*, 888 F.Supp. 779 (N.D. Tex. 1995), city taxpayers and residents sought an injunction against an "Ad Hoc

Committee—Downtown Sports Development Project," appointed by the Mayor of Dallas for the purpose of conducting negotiations with the owners of professional basketball and hockey teams regarding their proposed move from a city-owned arena. The committee was composed of five council members; less than a quorum of the full council of fifteen. As the court found, the group comprised "an official committee appointed by the Mayor for the purpose of negotiating behind closed doors with third parties, involving millions of dollars of taxpayer money with no public input. . . ." *Id.* at 785 (footnote omitted). Even though the committee was required by the city charter and council rules to comply with the Open Meetings Act, it was necessarily subject to the Open Meetings Act's requirements under "a fair reading of the [Act] itself in light of the strong public policy considerations for which the law was created." *Id.* The court noted that the composition of the committee weighted the work in favor of whatever recommendation it rendered: "With the five members of the Committee in favor of a new arena, as well as the Mayor who appointed them, only two more votes are needed from the remaining nine City Council members to go along with whatever deal the Committee cuts." *Id.* at 785-86. The court even found "circumstantial evidence that the Committee was designed to circumvent the [Act]." *Id.* at 786.

Likewise, in the situation you pose, the Evaluation Committee is appointed by the commissioners court to conduct negotiations with private parties regarding the expenditure of public funds. Unlike the ranking of architectural firms in the initial stage of the process, from which the commissioners court is at liberty to select the firm that the Evaluation Committee ranked in last place, the result of the negotiating process leaves no room for the commissioners' input: the court must either adopt or reject the contract negotiated by the Evaluation Committee. If the county judge and the commissioner who serve on the Committee agree on the terms negotiated, only one more vote would be needed from the remaining commissioners to adopt the privately-negotiated terms. These circumstances, we believe, render the Committee's work more than advisory and suggest that the commissioners court is more likely to act as a rubber-stamp.

The information you have supplied indicates that "[i]t would be difficult or impossible for the commissioners court to negotiate fees in open court." *See* Braswell letter of 5/4/99 *supra*, at 2. Although, contrary to the court in *Finlan*, we have no reason to believe that the appointment of the Evaluation Committee "was designed to circumvent the Act," neither this office nor any Texas court has recognized that the "difficulty" or "impossibility" of conducting business in public is a valid reason for exempting a governmental body from the command of the Open Meetings Act. To the contrary, the provisions of the Act are to be liberally construed in favor of open government. *See Cox Enterprises, Inc. v. Board of Trustees, Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986); *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).

Although we have in our analysis considered the two distinct tasks of the Committee, we do not believe that the Committee's work can be effectively bifurcated for purposes of its compliance with the Open Meetings Act. It would be anomalous to conclude that an identical group of individuals, created by the same appointing power to perform two distinct tasks that nevertheless form a coherent whole, is a "governmental body" at one moment but not the next. If one of its functions renders it a "governmental body" for purposes of the Open Meetings Act, it must be so

in all its endeavors. In our opinion, therefore, under the terms of the order of the Commissioners Court of Smith County dated April 12, 1999, appointing an Evaluation Committee, and under the terms of the Request for Qualifications dated March 17, 1999, the Evaluation Committee is a "governmental body" subject to chapter 551 of the Government Code, the Open Meetings Act.

You also ask whether the Evaluation Committee would be a "governmental body" under the Open Meetings Act if the county judge and commissioner are "removed from the committee." Although the question is close, we believe that the exclusion of those individuals would place the Committee more squarely in the category of a strictly "advisory" body, and thus remove it from the designation of "governmental body." The absence of any member of the commissioners court on the Evaluation Committee will necessarily require the court to consider afresh the negotiated contract, without the risk that two members will have already made up their minds. We therefore conclude that, if, under the circumstances you have described, the county judge and commissioner are excluded from the Evaluation Committee, the Committee is more clearly identifiable as an advisory body only. As was said in Attorney General Opinion H-994, in the absence of facts showing that such a reconstituted committee is more than advisory, its meetings are not required to be open by the Open Meetings Act.

## S U M M A R Y

An "Evaluation Committee" appointed by the Smith County Commissioners Court to recommend the selection of an architect and negotiate a contract with the selected firm is, under the facts described, a "governmental body" subject to the Open Meetings Act. If, however, the county judge and one commissioner are excluded from the Committee, it becomes merely an advisory body not subject to the Act.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General