# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-11-00005-CV
---

**Entergy Texas, Inc., Appellant**

**v.**

**Public Utility Commission of Texas; Cities of Beaumont, Bridge City, Conroe, Groves, Huntsville, Montgomery, Navasota, Nederland, Orange, Pinehurst, Port Neches, Shenandoah, Silsbee, and Willis; and Texas Industrial Energy Consumers, Appellees**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-10-000645, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Entergy Texas, Inc. appeals from the district court's judgment affirming a final order of appellee Public Utility Commission of Texas. In the order, the Commission set Entergy's 2010 energy efficiency cost recovery factor (EECRF). *See* Tex. Util. Code Ann. § 39.905 (West Supp. 2010); 16 Tex. Admin. Code § 25.181 (2008) (Public Util. Comm'n of Tex., Energy Efficiency Goal).[1] On appeal, Entergy contends that the Commission misconstrued section 39.905 of the utilities code and misapplied the rule against retroactive ratemaking. Because we conclude that the Commission's construction comports with the plain language of the statute, we affirm the district court's judgment affirming the Commission's final order.

---

[1] Section 39.905 of the utilities code was amended in 2011, *see* Act of May 17, 2011, 82d Leg., R.S., ch. 1346, § 1, 2011 Tex. Gen. Laws 180 (effective Sept. 1, 2011), and Commission rule 25.181 was amended in 2010. *See* 35 Tex. Reg. 7747 (2010). We refer to section 39.905 and rule 25.181 as they existed prior to the 2010 and 2011 amendments.

**BACKGROUND**

*Statutory Framework*

In 1999, as part of the restructuring of the electric utility industry, the legislature enacted section 39.905 of the utilities code, a part of the Public Utility Regulatory Act (PURA). *See* Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 39, 1999 Tex. Gen. Laws 2543, 2600 (amended 2005) (current version at Tex. Util. Code. Ann. § 39.905). At that time, section 39.905, titled "Goal For Energy Efficiency," provided that "electric utilities will administer energy savings incentive programs" and that a goal for the programs was "to acquire additional cost-effective energy efficiency equivalent to at least 10 percent of the electric utility's annual growth in demand." *Id*. The legislature directed the Commission that it "shall provide oversight and adopt rules and procedures, as necessary, to ensure that the goal of this section is achieved by January 1, 2004." *Id*.

Electric utilities recovered the costs of these programs through their base rates as operating expenses. *See* Tex. Util. Code Ann. § 36.051 (West 2007).[2] Once base rates are set, utilities' revenues from their rates are not reconciled with actual costs; the base rates are only changed prospectively in rate proceedings. *Id*. §§ 36.101–.156 (West 2007); *Public Util. Comm'n v. GTE-Southwest, Inc*., 901 S.W.2d 401, 406 (Tex. 1995) ("[U]tility rates, like any other legislation,

---

[2] Section 36.051 of the utilities code provides the parameters for setting base rates:

In establishing an electric utility's rates, the regulatory authority shall establish the utility's overall revenues at an amount that will permit the utility a reasonable opportunity to earn a reasonable return on the utility's invested capital used and useful in providing service to the public in excess of the utility's reasonable and necessary operating expenses.

Tex. Util. Code Ann. § 36.051 (West 2007).

generally can have only prospective application and cannot be used to recoup losses or gains incurred under prior legal rates.").

In 2007, the legislature amended section 39.905, increasing its benchmark goals applicable to residential and commercial customers. *See id*. § 39.905(a)(3).[3] As part of the amendment, the legislature created a new type of rate schedule separate from base rates for utilities to recover their energy efficiency expenditures. The legislature directed the Commission to establish an "energy efficiency cost recovery factor" (EECRF). *See id*. § 39.905(b)(1). The legislature did not expressly define EECRF, but stated that "[t]he commission shall provide oversight and adopt

---

[3] Subsection (a)(3) of section 39.905, as amended in 2007, stated:

[E]ach electric utility will provide, through market-based standard offer programs or limited, targeted, market-transformation programs, incentives sufficient for retail electric providers and competitive energy service providers to acquire additional cost-effective energy efficiency for residential and commercial customers equivalent to at least:

(A)  10 percent of the electric utility's annual growth in demand of residential and commercial customers by December 31, 2007;

(B)  15 percent of the electric utility's annual growth in demand of residential and commercial customers by December 31, 2008, provided that the electric utility's program expenditures for 2008 funding may not be greater than 75 percent above the utility's program budget for 2007 for residential and commercial customers, as included in the April 1, 2006, filing; and

(C)  20 percent of the electric utility's annual growth in demand of residential and commercial customers by December 31, 2009, provided that the electric utility's program expenditures for 2009 funding may not be greater than 150 percent above the utility's program budget for 2007 for residential and commercial customers, as included in the April 1, 2006, filing; . . . .

*Id*. § 39.905(a)(3)). Subsection (a)(3) was further amended in 2011, but the 2011 amendment is not applicable here. *See* Act of May 17, 2011, 82d Leg., R.S., ch. 1346, § 1, 2011 Tex. Gen. Laws 180 (effective Sept. 1, 2011).

3

rules and procedures to ensure that the utilities can achieve the goal of this section, including . . . establishing an energy efficiency cost recovery factor for ensuring timely and reasonable cost recovery for utility expenditures made to satisfy the goal of this section." *Id*. In contrast with the procedure for recovering operating expenses in base rates, the legislature authorized EECRFs to be adjusted to "match revenues against energy efficiency costs." *Id*. § 39.905(b-1).

In accordance with the legislature's directive, the Commission adopted a new rule 25.181 in 2008. *See* 16 Tex. Admin. Code § 25.181[4]; *see also* Tex. Util. Code Ann. § 39.001 (West 2007). Subsection (f) of the new rule 25.181 addressed cost recovery and provided the procedures for electric utilities to establish EECRFs. With this context, we turn to the parties' dispute.

### The Parties' Dispute

In May 2009, Entergy applied to set its 2010 EECRF rate schedule. In that proceeding, Entergy sought to revise its EECRF to allow for the recovery of energy efficiency costs that it alleged that it incurred but did not recover from 2005 to 2008. Entergy did not seek to recover those costs in its initial proceeding to establish an EECRF. Entergy applied for its first EECRF in May 2008, which was approved effective January 1, 2009.

Appellees the Cities of Beaumont, Bridge City, Conroe, Groves, Huntsville, Montgomery, Navasota, Nederland, Orange, Pinehurst, Port Neches, Shenandoah, Silsbee, and Willis intervened in the proceeding to set Entergy's 2010 EECRF rate schedule, contesting Entergy's right to recover its alleged energy efficiency costs incurred but unrecovered from 2005 to 2008. The

---

[4] Rule 25.181 was further amended effective December 1, 2010, but the amendment is not applicable here. *See* 35 Tex. Reg. 7747 (2010). As stated previously, references to rule 25.181 are to the rule as it existed prior to the 2010 amendment. *See* 33 Tex. Reg. 3585 (2008).

parties ultimately reached a stipulation that included the recovery of approximately $2.7 million

through Entergy's 2010 EECRF for energy efficiency costs that Entergy contended that it incurred

prior to 2009.

The Commission, however, did not allow Entergy to include an adjustment in its

2010 EECRF for under-recovered energy efficiency costs prior to January 1, 2009. In its order, the

Commission's conclusions of law included that it could not adopt a stipulation that did not comport

with PURA and Commission rules and that, "[u]nder PURA, a utility may not adjust its EECRF for

over- or under-collected energy-efficiency costs recovered through base rates rather than through an

EECRF." The Commission explained:

> The Commission has previously concluded that adjustments to an EECRF under PURA § 39.905(b-1) and P.U.C. Subst. R. 25.181(f) are allowed only for those periods when an EECRF was in place. The adjustments are limited to those energy-efficiency costs for which the EECRF was set to recover. Energy-efficiency costs that were previously included in and collected through base rates—prior to the establishment of an EECRF—are not properly included in such an adjustment. [Entergy]'s first EECRF was approved in August 2008 to recover energy-efficiency cost incurred in 2009. Thus, the energy-efficiency costs incurred prior to 2009 were properly recovered through base rates, and are not recoverable under [Entergy]'s EECRF. The Commission affirms its previous conclusion that under PURA § 39.905(b-1) and P.U.C. Subst. R. 25.181(f), a utility may seek adjustment of its EECRF to reflect any over- or under-collection of energy-efficiency-costs-recovery factor revenues from previous years in which the utility has an EECRF in place, but not from pre-EECRF years. (Footnotes omitted.)

Among its authority for denying Entergy's request, the Commission cited *State v. Public Utility*

*Commission*, 883 S.W.2d 190, 199 (Tex. 1994), to support its conclusion that an adjustment for pre-

2009 costs would violate the prohibition against retroactive ratemaking. The Commission also cited

a prior order concerning a different utility in which it had reached the same conclusion. Tex. Pub.

Util Comm'n, *Application of Oncor Elec. Co. for 2010 Energy Efficiency Cost Recovery Factor*, Docket No. 36958, Order, at 1–2 (Nov. 23, 2009).

Entergy filed a motion for rehearing and then sought judicial review of the Commission's order. *See* Tex. Util. Code Ann. § 15.001 (West 2007). The district court affirmed the Commission's final order. This appeal followed.

## ANALYSIS

In three issues, Entergy challenges the Commission's denial of Entergy's request to adjust its 2010 EECRF rate schedule to recover energy efficiency costs incurred prior to Entergy's establishment of an EECRF. Entergy contends that the district court's judgment should be reversed because the Commission's decision to deny its request for energy efficiency costs incurred but unrecovered from 2005 to 2008 violates sections 39.905(b-1) and (b)(3) of the utilities code, the Commission's decision conflicts with its statutory obligation to adopt rules and procedures for establishing an EECRF that ensures the timely recovery of reasonable costs expended on energy efficiency programs, and the Commission's decision misapplies the rule against retroactive ratemaking.

### *Scope and Standard of Review*

The Commission is "a creature of the legislature and has no inherent authority." *GTE-Southwest, Inc.*, 901 S.W.2d at 406. As an administrative agency, the Commission "may exercise only those specific powers that the law confers upon it in clear and express language." *Id*. at 407. The Commission may not "contravene specific statutory language, . . . or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory

6

provisions." *Cities of Corpus Christi v. Public Util. Comm'n*, 188 S.W.3d 681, 690 (Tex. App.—Austin 2005, pet. denied) (citation omitted).

The parties' dispute concerns statutory construction.[5] We review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

### Section 39.905

In its first issue, Entergy challenges the Commission's construction of section 39.905(b-1), contending that the Commission's construction conflicts with the plain language of the statute. *See* Tex. Util. Code Ann. § 39.905(b-1). Subsection (b-1) states:

> The energy efficiency cost recovery factor under Subsection (b)(1) may not result in
> an over-recovery of costs but may be adjusted each year to change rates to enable

---

[5] The utilities code generally requires a court to review the Commission's decisions under the substantial evidence rule. *See* Tex. Util. Code. Ann. § 15.001 (West 2007); Tex. Gov't Code Ann. § 2001.174(2) (West 2008). The substantial evidence rule requires a court to reverse or remand a case to the administrative agency for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are, among other grounds, "not reasonably supported by substantial evidence," or are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code Ann. § 2001.174(2)(E), (F).

utilities to match revenues against energy efficiency costs and any incentives to which they are granted. The factor shall be adjusted to reflect any over-collection or under-collection of energy efficiency cost recovery revenues in previous years.

*Id*. § 39.905(b-1). The Commission interprets this subsection to authorize adjustments for energy efficiency costs expended in EECRF years, but not in years prior to the establishment of an EECRF. Entergy counters that the second sentence in this subsection "expressly permits utilities to adjust their EECRFs to account for the over- or under-collection of energy efficiency costs in 'previous years' – whether such costs were then recovered through base rates or through an EECRF." Entergy focuses on the words "previous years," urging that those words are not ambiguous and expressly include pre-EECRF years. Entergy also argues that the Commission's construction renders "previous years" meaningless in the first year of EECRF rate schedules and that the legislature easily could have drafted the section to include the limitation that the Commission has imposed.

We begin with the statute's plain language. Reading the words "previous years" in context, they follow the preposition "in" after the words "energy efficiency cost recovery revenues." The plain meaning of the prepositional phrase "in previous years" then is to qualify or limit "energy efficiency cost recovery *revenues*." Had the legislature intended a broader category of revenues, such as from base rates, or "costs" expended prior to the establishment of an EECRF, it could have easily said so. *See Hughes*, 246 S.W.3d at 628–29 (declining to read additional words into statute in construing statute). We also find the subject and verb of the sentence—"factor [EECRF] shall be adjusted"—significant. *See City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2009) (courts "'presume that every word of a statute has been included or excluded for a reason'") (citation

8

omitted).  Before the collection of revenues from an EECRF may be "adjusted," an EECRF necessarily had to be in existence.

To support its argument that the legislature did not intend to limit "previous years" to years in which an EECRF was in place, Entergy separates the first sentence from the second sentence in subsection (b-1), arguing that the first sentence addresses the future and the second sentence the past. The Commission's construction, however, harmonizes the first and second sentences and gives meaning to each word and clause. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (effect must be given to each word and clause).  The first sentence references the "energy efficiency cost recovery factor [EECRF] under subsection (b)(1)," and subsection (b)(1) states the legislature's directive to the Commission to "[establish] an energy efficiency cost recovery factor [EECRF] for ensuring timely and reasonable cost recovery for utility expenditures made to satisfy the goal of this section."  Tex. Util. Code Ann. § 39.905(b)(1).  At the same time that it authorized the Commission to establish EECRFs, the legislature amended the benchmark goals for 2007, 2008, and 2009.  *Id.* § 39.905(a)(3).

Consistent with its directive to the Commission "for ensuring timely and reasonable cost recovery" to satisfy the legislature's goals, the legislature in the first sentence of subsection (b-1) authorized EECRFs to be adjusted each year so that prospective revenues could reasonably approximate the projected costs as well as any incentives.  The second sentence also addresses the new EECRF rate structure, but it addresses a further adjustment that does not have to be made on an annual basis.  The second sentence requires a reconciliation adjustment but it provides utilities with the option of not seeking this additional adjustment every year.  In this context, the plain

9

language of "previous years" has meaning in that it recognizes that this adjustment may be made for more than one year at a time to reconcile actual revenues with energy efficiency costs. *See* Tex. Gov't Code Ann. § 311.012(b) (West 2005) ("The singular includes the plural and the plural includes the singular."); *City of San Antonio*, 111 S.W.3d at 29.

Entergy argues that the Commission's construction contravenes section 39.905(b)(3). *See* Tex. Util. Code Ann. § 39.905(b)(3). Subsection (b)(3) allows utilities to defer costs of complying with section 39.905 when they are unable to establish an EECRF due to a rate freeze. *Id.*[6] Entergy argues that, if the Commission's construction of subsection (b-1) is correct, it is impossible for a utility to recover deferred costs under subsection (b)(3) through an EECRF because the utility would not have had an EECRF in place when it incurred the deferred costs. Under the plain language of section (b)(3), however, the subsection is an exception to the general rule when a utility is not able to implement an EECRF to allow the utility to defer its energy efficiency costs and to adjust its first EECRF to recover the energy efficiency cost recovery revenues that should have been

----

[6] Section 39.905(b)(3) states:

(b)     The commission shall provide oversight and adopt rules and procedures to ensure that the utilities can achieve the goal of this section, including:

(3)     providing a utility that is unable to establish an energy efficiency cost recovery factor in a timely manner due to a rate freeze with a mechanism to enable the utility to:

(A)     defer the costs of complying with this section; and

(B)     recover the deferred costs through an energy efficiency cost recovery factor on the expiration of the rate freeze period;
. . . .

Tex. Util. Code Ann. § 39.905(b)(3).

collected while the utility was in a base rate freeze. The Commission's construction of subsection (b-1) then does not conflict with subsection (b)(3).

The Commission's construction also is consistent with the statutory scheme as a whole. *See Parker*, 249 S.W.3d at 396 (in construing statutes, courts consider entire act, not isolated portions). In enacting a new rate schedule and authorizing a reconciliation under the new rate schedule between revenues and costs, we presume that the legislature acted with reference to the established base rate scheme. *See* Tex. Util. Code Ann. § 36.051; *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). The legislature then was aware that, prior to the establishment of an EECRF, a utility's energy efficiency costs would continue to be accounted for in its base rates and that there would be no reconciliation between actual revenues and costs. *See* Tex. Util. Code Ann. § 36.051; *GTE-Southwest, Inc.*, 901 S.W.2d at 407; *Public Utility Comm'n*, 883 S.W.2d at 199 ("Fundamental in the utility ratemaking process is the principle that utility rates are set for the future, and not the past."). Allowing the recovery of costs expended for years in which a utility was recovering costs under a base rate would be inconsistent with this statutory scheme. Further, under Entergy's proposed construction, a utility would be authorized on an open-ended basis to adjust its EECRFs to recover "costs" that were accounted for in a utility's prior base rates, a significant departure from the statutory scheme. *See Presidio Ind. Sch. Dist. v. Scott*, 309 S.W.3d 927, 931 (Tex. 2010) (citation omitted) ("Courts must not give the words used by the Legislature an 'exaggerated, forced, or constrained meaning.'").

As part of its first issue and in its second issue, Entergy argues that the Commission's construction is unreasonable and not entitled to deference because it defeats one of the stated

11

purposes of the statute by denying Entergy the right to recover costs incurred to administer statutorily-mandated energy efficiency programs. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) (citations omitted) (administrative agency's "interpretation of statute it is charged with enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language"). The legislature directed the Commission in section 39.905(b)(1) to establish an EECRF "for ensuring timely and reasonable cost recovery for utility expenditures made to satisfy the goal of this section." Tex. Util. Code Ann. § 39.905(b)(1). Although the 2007 amendments became effective September 1, 2007, the Commission did not adopt its new rule 25.181 until 2008, and the first EECRFs were not implemented until January 1, 2009. Entergy argues that, under the Commission's construction, utilities cannot recover their 2008 expenditures because of the Commission's inaction and that the legislature could not have intended for utilities to be unable to recover their 2008 costs incurred to satisfy the legislature's goals for that year simply because the Commission was unable to amend its rules prior to May 2008.

That utilities were unable to obtain an EECRF before January 1, 2009, however, is not dispositive. We presume that the legislature was aware of the time that it would take for the Commission to adopt rules for EECRFs and of the "regulatory lag" in setting rates. *See Public Util. Comm'n*, 883 S.W.2d at 193 n.3, 199 (discussing "regulatory lag" in resetting rates "due to the inherent inability in the regulatory process to allow for immediate rate decreases or increases" and "recogniz[ing] that regulatory lag is ordinarily an element of the risk associated with investment in a utility"); *Acker*, 790 S.W.2d at 301 (presume legislature aware of law and acting with reference to it). Further, prior to its establishment of an EECRF, a utility could have sought to change its base

12

rates if they were not sufficient because of increased energy efficiency goals. *See* Tex. Util. Code Ann. §§ 36.101–.111.

Entergy also argues that the Commission's construction of section 39.905(b-1) is not entitled to deference because it is directly contrary to its contemporaneous construction of the statute. In its order, however, the Commission cited a separate order concerning a different utility in which it had reached the same conclusion. *See* Tex. Pub. Util. Comm'n, *Application of Oncor Elec. Co. for 2010 Energy Efficiency Cost Recovery Factor*, Docket No. 36958, Order, at 1–2. Further, the plain language of the Commission's rule adopting the procedures for establishing an EECRF is consistent with its construction of the statute. *See* 16 Tex. Admin. Code § 25.181; *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (courts review administrative rules in the same manner as statutes).

Rule 25.181 states that a utility may recover its energy efficiency program costs through an EECRF, base rates, or deferred until the costs may be included in an EECRF. 16 Tex. Admin. Code § 25.181(f)(1), (2), & (7). The rule also states: "Each year, a utility with an EECRF shall apply to adjust the EECRF in order to . . . minimize any over- or under-collection of energy efficiency costs *resulting from the use of the EECRF*." *Id.* § 25.181(f)(4) (emphasis added). The rule further requires that a utility's application to establish or change an EECRF to "contain the actual revenues *attributable to the EECRF* for any period for which the utility seeks to adjust the EECRF for an under- or over-recovery of EECRF *revenues*," *see id.* § 25.181(f)(9)(C) (emphases added), and places the burden on the utility to prove that the "calculations of any under- or over-recovery of EECRF *revenues* is consistent with this section." *Id.* § 25.181(f)(11)(B) (emphasis added). Consistent with the Commission's construction of section 39.905(b-1), the plain language

13

of rule 25.181 makes clear that the reconciliation adjustment is between revenues and costs incurred under an EECRF.

We conclude that the Commission's construction of section 39.905(b-1) comports with the plain language of the statute. We overrule Entergy's first and second issue.

### *Retroactive Ratemaking*

In its third issue, Entergy urges that its interpretation of section 39.905 that would allow Entergy to adjust its EECRF to reflect under-recoveries of its energy efficiency program costs from pre-EECRF years would not constitute retroactive ratemaking or violate the constitutional prohibition on retroactive laws. *See* Tex. Const. art. I, § 16; *Public Util. Comm'n*, 883 S.W.2d at 199. Because we have concluded that the Commission's construction of section 39.905(b-1) comports with the plain language of the statute, we need not address this issue. *See* Tex. R. App. P. 47.1.

### CONCLUSION

For these reasons, we affirm the district court's judgment affirming the final order of the Commission.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 8, 2012

14